Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Richard R. Barker
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSHUA DUANE HARRY,<br>Defendant. | 2:21-CR-00123-RMP<br><br>United States'<br>Sentencing Memorandum |

Plaintiff, United States of America, by and through United States Attorney Vanessa R. Waldref and Assistant United States Attorney Richard R. Barker, submits the following sentencing memorandum. As set forth herein, the United States respectfully seeks of a period of incarceration of thirty-three months, followed by a three-year term of supervised release.

### STATEMENT OF FACTS

On the morning of June 27, 2021, Defendant assaulted his 70-year-old father, M.F.H, by hitting his head and back, smashing his head into the ground, strangling him, and dragging him by a red string wrapped around his neck. ECF No. 53 at 4.

On the day of the attack, the victim, M.F.H., was going outside. Defendant stopped M.F.H. and said, "you're not going outside, you'll let the little people in." ECF No. 63 ¶ 30. M.F.H. picked Defendant up and slammed him into the couch attempting to calm Defendant down, as Defendant had become "really excited" and began running around

United States Sentencing Memorandum - 1

the house throwing water. *Id*. Defendant then grabbed a rope or string *Id.* After that, M.F.H. could not recall exactly what happened, as he was "hit in the head," but remembered Defendant kicked him in the legs, which made M.F.H. fall to the ground. Defendant then kicked M.F.H. in the head. *Id*. At some point, Defendant pulled a piece of thick red shoestring around his victim's neck, sat on the victim's back, and pulled on the thick string. *Id*. M.F.H., in an attempt to remain conscious, flexed his neck muscles to keep his airway open each time Defendant pulled on the thick string. *Id.* M.F.H. explained that his ability to hear came and went while this occurred, but M.F.H. recalled hearing Defendant say, "you're one tough guy to kill." *Id*.

    Corporal Logan Hedden from the Coville Tribal Police Department (CTPD) was one of the first responders to the scene. *Id*. at ¶18. As Corporal Hedden arrived, he saw Defendant walking around the area where the assault occurred. *Id*. When Corporal Hedden stopped his vehicle, Defendant put his hands in front of his body and stated, "cuff me." *Id*. Corporal Hedden observed blood on Defendant's face, chest, shorts, and legs. Defendant also had a bloody nose and mouth, and blood was streaking down his chest and face onto his stomach. *Id.* at ¶21. Defendant's right ankle also appeared to be bleeding. *Id*. at ¶21.

    During his investigation, Corporal Hedden observed that M.F.H. had severe trauma to his face. Both of M.F.H.'s eyes were swollen closed, and a red piece of string was tied in his hair. *Id*. at ¶19. Corporal Hedden asked M.F.H. what happened, but M.F.H. declined to make a statement at that time. *Id*. Corporal Hedden walked the crime scene, he further observed blood in the front yard where the attack occurred. Corporal Hedden also photographed and recovered the thick shoe string that was used during the assault. *Id*.

    While on scene, Corporal Hedden interviewed two individuals who witnessed the assault. The first eyewitness stated she heard Defendant yelling at M.F.H. inside the residence, beginning around 6:00 a.m. *Id*. at ¶24. The witness explained that she saw Defendant and M.F.H. in the front yard. Defendant was pulling on a red string wrapped

United States Sentencing Memorandum - 2

around M.F.H.'s neck. *Id*. As Defendant was choking M.F.H. with the string, Defendant "smash[ed] [M.F.H.'s] head into the ground" several times. *Id*. Even though the witness repeatedly told him to stop, Defendant continued the assault, prompting the witness to call 911.

A second eyewitness explained to Corporal Hedden that she observed M.F.H. on the ground in front of the residence. *Id*. at ¶25. M.F.H. had a string wrapped around his neck and the Defendant was behind him with his hands behind M.F.H.'s head pulling on the string and "dragging him around like a doll." *Id*. After Corporal Hedden spoke with this second eyewitness, an unknown male approached the scene and told Corporal Hedden he was there to check on M.F.H. *Id*. at ¶26. The unidentified male witness explained that Defendant had become more aggressive over the past several weeks. The witness further stated that Defendant talked about seeing people, who, according to Defendant, were living inside the walls of the residence. *Id*.

As a result of Defendant's acts, M.F.H. had to be hospitalized. *Id*. at ¶ 22. M.F.H. had two broken ribs, a collapsed lung, and severe bruising and swelling. *Id*. ¶ 32. Photos depicted marks and bruises on M.F.H.'s shoulders, the back of his neck, his face, and knees. Below are photographs of M.F.H.'s injuries and the string used during the assault:




*M.F.H.'s injuries*  *Photographs taken in the days after the assault*

United States Sentencing Memorandum - 3



*Photograph of the thick shoestring used to assault M.F.H.*

When questioned about the attack in a post-*Miranda* interview, Defendant stated he was mad, and started fighting with M.F.H. *Id*. at ¶27. Defendant told Corporal Hedden, "I beat the hell out of him, just beat him up." *Id*. When questioned as to how he beat M.F.H., Defendant stated, "punching, kicking, everything." *Id*.

An October 21, 2021 physiological evaluation indicated that Defendant began using methamphetamine, heroin, and synthetic cathinone (also known as bath salts) about two weeks prior to the offense. *Id*. at ¶ 33. Defendant apparently was using these substances up until the night before his arrest for assaulting M.F.H. *Id.* According to the evaluation, Defendant expressed he felt paranoid and heard voices when he was under the influence of drugs and alcohol. *Id*.

## VICTIM IMPACT

M.F.H. has elected to not submit a victim impact statement in this case. In this regard, the government understands that M.F.H., who again is Defendant's father, does not want to his son to go to prison. That said, the offense itself demonstrates the incredible impact on M.F.H. Defendant was observed "smashing M.F.H.'s head into the ground" and "dragging him around like a doll." During the attack, Defendant stated, "You are one tough guy to kill." ECF No. 57 at ¶ 30. While the record indicates M.F.H. tried to defend

United States Sentencing Memorandum - 4

himself during the assault, there is no indication whatsoever that M.F.H. initiated the assault. The photographs of the victim's injuries, set forth above, demonstrate that M.F.H. is fortunate to be alive.

## SENTENCING CALCULATIONS

The Government agrees with United States Probation that Defendant's total offense level is 20, criminal history category is 0, and the guideline range is 33 to 41 months. ECF No. 63 at ¶ 4, 50-61.

## SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In determining the appropriate sentence, this Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense</u>

The circumstances of the offense involve Defendant intentionally strangling his 70-year-old father with a dangerous weapon, resulting in serious bodily injury to M.F.H. This was a violent crime that resulted in hospitalization of the victim. Defendant, who was high on methamphetamine and heroin at the time, was acting strangely and aggressively. He then used a thick shoestring to strangle his father. The attack was incredibly violent, and Defendant indicated at one point that he was trying to kill his victim. Due to the severity of the nature of the offense, incarceration is appropriate.

2. <u>History and Characteristics of Defendant</u>

While Defendant's Criminal History Score and Offender Category are low, Defendant's criminal history is nonetheless concerning. Defendant has numerous contacts with contact with law enforcement. In 2000, when he was 14, Defendant was arrested for Fourth Degree Assault and Harassment. *See* ECF No. 57 at ¶65.  In 2002, he was charged and sentenced for Second Degree Burglary and Third-Degree Theft. *Id.* at ¶ 71. Defendant also has convictions and charges in tribal court for violent offenses. In 2006 and 2016, Defendant was convicted for Battery-Domestic Violence. *Id.* at ¶ 87-95. He also has a number of contacts with law enforcement relating to substance abuse. *Id.* at ¶¶ 98-100.

United States Sentencing Memorandum - 5

Defendant's contacts with law enforcement suggest an escalating series of threatening and violent behaviors. While Defendant performed well in his drug treatment, which is admirable, an incredibly serious risk remains if Defendant relapses. A sentence of thirty-three months, which is at the low end of the applicable guidelines range, balances the seriousness of the offense as well as the unique posture of this case and the victim's position on sentencing.

3. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and protect the public.</u>

Again, this was a brutal attack. It would not be a just result for the victim or for the public if Defendant is not incarcerated for at least some period of time. Violent crime – including crimes against elderly victims – is incredibly serious and requires a serious response. The reality is that violent crime too often goes unpunished because victims and/or witnesses are not cooperative. Here, it is clear that incarceration is necessary to serve as a punishment and deterrent to Defendant and, more importantly, to keep the community safe.

4. <u>The need to avoid unwarranted sentence disparity among Defendants with similar records who have been found guilty of similar conduct.</u>

The best way to ensure consistent sentences for similarly-situated Defendants across courtrooms, districts, and the country is for courts to apply the Sentencing Guidelines in the same manner everywhere. *See United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007); *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). The Guidelines are the only normative way to accomplish that. In this case, a Guidelines sentence of thirty-three months properly accounts for "the need to avoid unwarranted sentence disparities among Defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Numerous courts have recognized that sentencing within the Guidelines range serves as a bulwark against unwarranted sentencing disparity. *See United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006)

United States Sentencing Memorandum - 6

(recognizing that guidelines "help to maintain uniformity in sentencing throughout the country"); *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . . are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated Defendants") (quoting 18 U.S.C. § 3553(a)(6)); *United States v. Smith*, 445 F.3d 1, 7 (1st Cir. 2006) (noting that "the guideline range . . . is the principal means of complying with" the goal of avoiding unwarranted sentencing disparity).

The Ninth Circuit has specifically observed that a sentence consistent with the guideline range is unlikely to be disparate because such a sentence "represents the sentence that most similarly situated Defendants are likely to receive." *United States v. Becerril-Lopez*, 541 F.3d 881, 895 (9th Cir. 2008). Thus, mindful that the Guidelines must be "the starting point and the initial benchmark," *United States v. Carty,* 520 F.3d 984, 991–92 (9th Cir. 2008), the United States submits that a sentence of thirty-three months, which is the low end of the guidelines, will avoid unwarranted sentencing disparity.A sentence of anything less, especially on these facts, would be disproportionately low considering Defendant's history and the harm inflicted on Defendant's 70-year-old father.

### GOVERNMENT'S SENTENCING RECOMMENDATION

The Government recommends this Court impose a sentence of thirty-three-months imprisonment and a three-year term of supervised release. This sentence balancing the victim's feelings about Defendant with the seriousness of what actually happened.

Respectfully submitted this 9th day of August, 2022.

        Vanessa R. Waldref
        United States Attorney

        *s/ Richard R. Barker*
        Richard R. Barker
        Assistant United States Attorney

United States Sentencing Memorandum - 7

## CERTIFICATION

I hereby certify that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court and counsel of record using the CM/ECF System.

*s/Richard R. Barker*
Richard R. Barker
Assistant United States Attorney

United States Sentencing Memorandum - 8